**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RODNEY BEVANS a/k/a RODNEY BEVINS,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:26-2122** |
| **v.** | : | **(JUDGE MANNION)** |
| **PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the Court are *pro se* Plaintiff Rodney Bevans a/k/a Rodney Bevins ("Bevans")'s application for leave to proceed *in forma pauperis* ("IFP Application") and civil rights complaint in which he asserts claims under 42 U.S.C. §1983 for violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution, as well as claims for violations of Title II of the Americans with Disabilities Act, 42 U.S.C. §§12131–65 ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("RA"), against the Commonwealth of Pennsylvania Department of Corrections ("DOC"), one of its prisons, and a certified physician's assistant working at one of its prisons. For the reasons stated below, the Court will: (1) grant the IFP Application and allow Bevans to proceed *in forma pauperis* in this case; (2) dismiss with prejudice Bevans's

(a) Section 1983 claims against the DOC and SCI Mahanoy, (b) Section 1983 Fourteenth Amendment due process claims against Abel, (c) ADA and RA claims against SCI Mahanoy and Abel in his individual and official capacities, and (d) ADA and RA claims to the extent he seeks punitive damages; and (3) dismiss Bevans's Section 1983 Eighth Amendment claims without prejudice to him repleading them in an amended complaint.

## I. BACKGROUND

Bevans, a convicted and sentenced state prisoner currently incarcerated at Pennsylvania State Correctional Institution Mahanoy ("SCI Mahanoy"), commenced this action by filing his complaint, his IFP Application, and his certified prisoner trust fund account statement, all of which the Clerk of Court docketed on July 29, 2026. (Docs. 1–3.) In his complaint, Bevans names as Defendants: (1) the DOC; (2) SCI Mahanoy; and (3) Certified Physician's Assistant Mark Abel ("Abel"). *See* (Doc. 1 at 1).[1]

Bevans alleges that he is currently incarcerated in the DOC and "classified as Mental Health Stability D-code and GBMI (Guilty but Mentally

[1] Bevans uses the phrase "*et al.*" when identifying Defendants in the caption of the complaint (*id.*), and then states in the body of the complaint that "Defendants include [the DOC], its officials, medical providers, and supervisory personnel responsible for medical care and disability accommodations." (*Id.* ¶5.) The Court will discuss Bevans's references to unidentified Defendants later in this Memorandum.

III), reflecting a serious and recognized mental health condition requiring treatment and accommodation." (*Id.* ¶¶4, 6.) Bevans suffers from obstructive sleep apnea, severe psoriasis, degenerative disc disease, cervical osteoarthritis, and spinal stenosis, and he claims that these medical conditions substantially limit his major life activities such as walking, standing, balance, gripping, sleeping, and "[t]oileting." (*Id.* ¶7, 9.)

Bevans also experiences "progressive neurological deterioration," including "foot drop, bilateral lower extremity weakness and tremors, gait instability and near falls, loss of grip strength, chronic pain in his neck and back, headache, dizziness, and urinary incontinence." (*Id.* ¶8 (cleaned up)). He claims that his "neurological symptoms are progressively worsening, placing [him] at risk of permanent nerve damage, paralysis, and serious injury." (*Id.* ¶13).

Although Bevans has the above medical issues, the DOC confines him in a double cell, which allegedly "increases his fall risk, restricts his mobility and safe positioning, limits his access to hygiene during incontinence, and exacerbates his neurological and pain symptoms." (*Id.* ¶10 (cleaned up)). Bevans requested the following accommodations for his medical conditions such as a Z-code (single-cell status), a neurological evaluation, and a transfer to a facility with "appropriate medical access." (*Id.* ¶11); *see also* (*id.*

¶18 (alleging that Defendants failed to provide "[a]dequate medical evaluation and specialist care," "[n]ecessary accommodations (Z-code housing)," and "[p]rotection from known risks (falls, incontinence-related harm)")). Yet, "Defendants failed and/or refused to provide adequate medical care and reasonable accommodations." (*Id.* ¶12.) They also subjected him to unsafe conditions, such as "[h]igh fall risk," "[i]nadequate sanitation access," and "[u]nsafe housing conditions." (*Id.* ¶25.)

Based on these factual allegations, Bevans asserts Eighth Amendment claims for deliberate indifference to his serious medical needs and unlawful conditions of confinement, Fourteenth Amendment due process claims, and claims for violations of the ADA and RA. *See* (*id.* at 3–4). For relief, Bevans seeks, *inter alia*: (1) injunctive relief ordering that he receive a Z-code for single-cell status, neurological or neurosurgical evaluation, appropriate diagnostic testing, and a "transfer to SCI[]Chester[,] SCI[]Phoenix[,] or [an] equivalent facility with adequate medical care"; (2) a declaration that Defendants violated his constitutional and statutory rights; and (3) compensatory and punitive damages. *See* (*id.* at 4–5).

## II. LEGAL STANDARDS

### A. Applications for Leave to Proceed *in Forma Pauperis*

Under 28 U.S.C. §1915(a)(1), a district court "may authorize the commencement . . . of any [civil] suit, . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor."[2] *Id.* This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [*Deutsch v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, §1915(a) allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* by filing in good faith an affidavit stating, among other things, that [they are] unable to pay the costs of the lawsuit. *Neitzke*, 490 U.S. at 324, 109 S.Ct. 1827.

*Douris*, 293 F. App'x at 131–32.

---

[2] "The reference to prisoners in §1915(a)(1) appears to be a mistake. *In forma pauperis status* is afforded to all indigent persons, not just prisoners." *Douris v. Middletown Twp.*, 293 F. App'x 130, 132 n.1 (3d Cir. 2008) (unpublished).

### B. Screening Complaints Under 28 U.S.C. §§1915A and 1915(e)(2)

The Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). If such a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. *See id.* §1915A(b)(1). The Court has a similar screening obligation regarding actions filed by individuals proceeding *in forma pauperis*. *See id.* §1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

In reviewing legal claims under Sections 1915A(b) or 1915(e)(2)(B), the Court applies the standard governing motions to dismiss filed under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Smithson v. Koons*, No. 15-cv-1757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under §1915A(b)(1) [and] §1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), *report and recommendation adopted*, 2017 WL 3008559 (M.D. Pa. July 14, 2017); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to Section

1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *See id.*; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). However, the Court will not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Sections 1915A and 1915(e)(2)(B). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of *pro se* litigation, the Court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)). Therefore, a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle*, 429 U.S. at 106). Moreover, when construing a *pro se* complaint, the Court will "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). However, *pro se* litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

**C. Section 1983**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. §1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

> thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution of laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III. DISCUSSION

### A. The IFP Application

After reviewing the IFP Application, it appears that Bevans lacks the financial means to prepay the filing fee in this matter. Therefore, the Court will grant the IFP Application and allow Bevans to proceed *in forma pauperis* in this action.[3]

---

[3] However, because Bevans is a prisoner, he is advised that he will be obligated to pay the filing fees for this case in installments in accordance with the Prison Litigation Reform Act ("PLRA"), regardless of the outcome. *See* 28 U.S.C. §1915(b).

### B. Screening of Bevans's Complaint

#### 1. Identification of Defendants in the Complaint

When naming the Defendants in the caption of his complaint, Bevans uses the phrase, "et al." (Doc. 1 at 1.) The use of this Latin phrase, which means "[a]nd other persons," *Et al.*, Black's Law Dictionary (12th ed. 2024), in the caption of the complaint, is improper under the Federal Rules of Civil Procedure because "[t]he title of the complaint must name *all* the parties." Fed. R. Civ. P. 10(a) (emphasis added); *see also Jeffers v. Lycoming Cnty. Prison*, No. 25-cv-2394, 2026 WL 657743, at *2 n.2 (M.D. Pa. Mar. 9, 2026) (explaining that plaintiff's use of "et al." in caption of complaint was improper and determining that court would consider Plaintiff's claims against only defendants plaintiff identified in the caption). Only "the title of other pleadings, after naming the first party on each side, may refer generally to other parties" by using phrases such as "et al." *Id.*

Here, because the only Defendants Bevans identifies in the caption and body of his complaint are the DOC, SCI Mahanoy, and Abel, the Court construes the complaint as containing claims against only these Defendants. The Court will not construe the complaint as containing claims against any unidentified Defendants.

### 2. Section 1983 Claims

#### a. Claims Against the DOC

The Court will dismiss Bevans's Section 1983 claims against the DOC because the Eleventh Amendment bars such claims. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity . . . against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. This Amendment

> has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court. Indeed, it has been recognized for over two hundred years that a state's immunity from suit in federal court is a fundamental principle of our constitutional structure that preserves, as intended by the Framers, the respect and dignity of the states and protects the ability of the states "to govern in accordance with the will of their citizens."

*Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (quoting *Alden v. Maine*, 527 U.S. 706, 751 (1999)).

Eleventh Amendment immunity extends to all state agencies, departments, and entities "having no existence apart from the state." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted). As such, the DOC, as an agency of the Commonwealth of Pennsylvania, *see* 71 P.S. §61(a) ("The executive and administrative work of this

Commonwealth shall be performed by the . . . Department of Corrections . . . ."), is entitled to the Commonwealth's Eleventh Amendment immunity. *See Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (stating that "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity"); *see also Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (explaining that "state sovereign immunity prohibit[ed]" plaintiff's Section 1983 claims against the DOC).

There are three narrow exceptions to Eleventh Amendment immunity: (1) if the state waives its immunity; (2) if Congress exercises its power under Section 5 of the Fourteenth Amendment to override that immunity; and (3) if the plaintiff sues an individual state official for "prospective relief to remedy an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 503 (3d Cir. 2001); *see Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). None of these exceptions apply here because the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. C.S. §8521(b) ("Nothing contained in this subchapter shall be construed

to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Lavia*, 224 F.3d at 195 (explaining that Pennsylvania has not waived its Eleventh Amendment immunity). In addition, Congress did not intend to abrogate a state's Eleventh Amendment immunity by enacting Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 344–45 (1979) (stating that "§1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States"). Furthermore, the third exception to Eleventh Amendment immunity is inapplicable here because the DOC is a state agency and not a state official. *See Ricker v. Pa. Dep't of Corr.*, No. 21-cv-467, 2022 WL 533818, at *4 (M.D. Pa. Feb. 22, 2022) (explaining that the Eleventh Amendment barred plaintiff's request for prospective injunctive relief against the DOC because it "is a state agency and not a state official"); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (explaining that the *Ex parte Young* exception to Eleventh Amendment immunity "has no application in suits against the

States and their agencies, which are barred regardless of the relief sought" (citing *Cory v. White*, 457 U.S. 85, 90–91 (1982))).

In addition to the above, for Bevans to state a plausible claim under Section 1983, he must allege that a "person" acting under the color of state law deprived him of his constitutional rights. *See* 42 U.S.C. §1983 (indicating that it applies only to "persons" acting under color of law who violate Constitution or federal law); *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976) ("'[E]very person' who acts under color of state law to deprive another of a constitutional right [is] answerable to that person in a suit for damages." (citing 42 U.S.C. §1983)). However, an administrative department of a state, such as the DOC, is not considered a "person" for purposes of Section 1983 and, thus, is not amenable to suit under this statute. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (indicating that neither states nor "governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" are "persons" for purposes of Section 1983); *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (stating that a state agency may not be sued under Section 1983 because it is not a "person" for purposes of the statute); *Foye v. Wexford Health Sources Inc.*, 675 F. App'x 210, 215 (3d Cir. 2017) (unpublished) (dismissing Section 1983 claims against the DOC because, *inter alia*, it was not a "person[] subject to suit under" Section 1983).

Accordingly, the Court will dismiss Bevans's Section 1983 claims against the DOC. *See, e.g.*, *Sirmons v. Dep't of Corr. Admin.*, Nos. 25-cv-510, 25-cv-804, 2025 WL 1583870, at *6 (M.D. Pa. June 4, 2025) (dismissing plaintiff's Section 1983 claims against the DOC because it was entitled to Eleventh Amendment immunity and was not a "person" amenable to suit under Section 1983).

**b. Claims Against SCI Mahanoy**

As for Bevans's Section 1983 claims against SCI Mahanoy, he fails to plead a plausible Section 1983 claim because, like the DOC, SCI Mahanoy and the DOC's other correctional institutions are not a "persons" subject to suit under Section 1983. *See Nicholas v. SCI Smithfield*, No. 25-2187, 2025 WL 2807762, at *1 (3d Cir. Sept. 30, 2025) (unpublished) ("The District Court properly dismissed Nicholas's second amended complaint for failure to state a claim. SCI-Smithfield . . . is not a 'person' amenable to suit under §1983 . . . ." (internal citations omitted)); *Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (unpublished) ("[A]s a state agency and the prison its administers, the [DOC] and SCI-Albion are not 'persons' and thus cannot be sued under [Section 1983]." (citing *Will*, 491 U.S. at 71)). Therefore, the Court will dismiss Bevans's Section 1983 claims against SCI Mahanoy.

### c. Fourteenth Amendment Claims

Bevans indicates that "[t]his action arises under the Eighth and Fourteenth Amendments" in the first paragraph of his complaint. *See* (Doc. 1 ¶1). Although it is unclear whether Bevans intends to assert a Fourteenth Amendment due-process claim based on the remaining allegations in his complaint, the Court presumes that he asserts such a claim in his complaint. For the reasons stated below, the Court will dismiss any possible Fourteenth Amendment claim.

The Fourteenth Amendment of the United States Constitution provides in pertinent part that: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Cons. amend. XIV, §1. "The core concept of due process is protection against arbitrary government action [and, a]s that concept has developed, it has come to have both substantive and procedural components." *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). The substantive component "limits what government may do regardless of the fairness of procedures that it employs," *Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000), whereas the procedural component "governs the manner in which the government may infringe upon an individual's life, liberty, or property." *Evans*, 645 F.3d at 662.

### (1) Procedural Due Process

Bevans, as with all prisoners, is "not completely deprived of the protections of the Due Process Clause simply because [he is a] prisoner[]." *Id.*; *see also Sandin v. Conner*, 515 U.S. 472, 485 (1995) (explaining that although prisoners "do not shed all constitutional rights at the prison gate, lawful incarceration 'brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system'" (internal citation omitted) (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977))). Thus, "[p]rocedural protections must be afforded to [prisoners] before they are stripped of the rights they still retain while incarcerated." *Evans*, 645 F.3d at 662–63 (citation omitted).

There are two scenarios in which a prisoner holds a liberty interest triggering due process protections:

> when "state statutes and regulations create a liberty interest in freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and (2) when "severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing."

*Evans*, 645 F.3d at 663 (quoting *Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010)). These two scenarios are characterized as a "'so-called state-

created liberty interest'" and a "'so-called independent due process liberty interest,'" respectively. *Id.* (quoting *Renchenski*, 622 F.3d at 325).

With respect to independent due process liberty interests, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon [them] and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). Thus, an independent due process liberty interest arises only "when severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing." *Renchenski*, 622 F.3d at 325. Examples of such severe changes in conditions of confinement include, *inter alia*, "forced administration of antipsychotic medication, *Washington v. Harper*, 494 U.S. 210, 221–22 (1990), or involuntary transfer to a mental hospital, *Vitek v. Jones*, 445 U.S. 480, 492 (1980), or, for a prisoner not convicted of a sex offense, forced participation in sex-offender therapy, *Renchenski*, 622 F.3d at 326." *Evans*, 645 F.3d at 665 (first two citations altered from original).

State-created liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected

manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (internal citations omitted); *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (stating that, "[a]fter *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life'" (quoting *Sandin*, 515 U.S. at 484)); *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 559 (3d Cir. 2017) (explaining that, "in the conditions of confinement context," the liberty interest must be "substantial": "the right alleged must confer freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" (internal quotations omitted)). A two-factor inquiry informs whether prison conditions impose "atypical and significant hardship": "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Williams*, 848 F.3d at 560 (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). Additionally, when determining whether a state-created liberty interest exists, courts are not to "compare the

prisoner's own life before and after the deprivation." *Powell v. Weiss*, 757 F.3d 338, 344 (3d Cir. 2014). Instead, "[t]he baseline for determining what is atypical and significant—the ordinary incidents of prison life—is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." *Id.* (citations and internal quotation marks omitted).

Here, it does not appear that Bevans expressly asserts a procedural due process claim in his complaint. He has not identified a liberty interest pertaining to his medical conditions that triggers due-process protections. To the extent that he challenges his continued placement at SCI Mahanoy and his desire for a transfer to a different state correctional institution, he fails to identify a valid liberty interest. *See Rivera v. Fed. Bureau of Prisons*, 197 F. App'x 169, 170 (3d Cir. 2006) (unpublished) (noting that "[p]risoners do not have a liberty interest in being assigned to the facility of their choice"); *see also Williams v. Sorber*, No. 24-2046, 2025 WL 1419716, at *3 (3d Cir. May 16, 2025) (unpublished) (concluding that prisoner-plaintiff "failed to state a procedural due process claim based on his transfer to the quarantine unit" at SCI Phoenix during the COVID-19 pandemic, where the plaintiff remained from August 2021 until April 2022, because "[i]t is well settled that a prisoner does not have a protected right to be placed in the cell or unit of [their] choice"

and "months-long stays in restrictive confinement did not implicate a liberty interest" (citations omitted)). Similarly, Bevans's placement in a double, rather than a single, cell does not implicate a protected liberty interest. *See Carpenter v. Kloptoski*, No. 08-cv-2233, 2012 WL 911558, at *3 (M.D. Pa. Mar. 16, 2012) (concluding that plaintiff lacks a "Fourteenth Amendment right to be housed in a single-cell and his right to due process is not offended by any decision to place him in a cell with another inmate"); *Austin v. Chesney*, No. 93-cv-4010, 1995 WL 498720, at *3 (E.D. Pa. Aug. 22, 1995) ("Living in a double-cell is an expected ordinary incident of prison life, [and] retaining single-cell status is not a protected liberty interest.").[4]

**(2) Substantive Due Process**

As for Bevans's potential substantive-due-process claims, the Court recognizes that "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). To plead a plausible substantive-due-process claim, a plaintiff must include sufficient allegations establishing "that the particular interest at issue is protected by the substantive due process clause, and that

[4] Even if Bevans had a protectable liberty interest at stake here, he does not allege how he received constitutionally insufficient process relating to his continued placement in a double cell at SCI Mahanoy.

the government's deprivation of that protected interest shocks the conscience." *Kane v. Barger*, 902 F.3d 185, 192 (3d Cir. 2018) (citations and internal quotation marks omitted); *see also Lewis*, 523 U.S. at 847 (explaining that plaintiff asserting substantive due process claim must allege conduct that is "arbitrary[] or conscious shocking"). "This standard's stringency reflects maintenance of the proper proportions of constitutional, as opposed to ordinary tort, violations." *Blain v. Twp. of Radnor*, 167 F. App'x 330, 333 (3d Cir. 2006) (unpublished) (citing *Lewis*, 523 U.S. at 847 n.8).

In this case, Bevans fails to state a plausible substantive-due-process claim for two reasons. First, and as explained above, he does not identify a protected interest at stake. *See Wilkinson*, 545 U.S. at 221. Second, to the extent that Bevans asserts substantive-due-process claims based on his placement in a double cell at SCI Mahanoy or the alleged lack of appropriate medical care for his medical needs, such claims fail because of the "more-specific-provision rule," which provides that "if a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). These claims are specifically covered by the Eighth Amendment;

as such, Bevans cannot maintain separate substantive-due-process claims based on this alleged conduct. Accordingly, the Court will also dismiss with prejudice Bevans's complaint to the extent he asserts any Fourteenth Amendment substantive due process claims.

### d. Eighth Amendment Claims

#### (1) Deliberate Indifference to Serious Medical Needs

Bevans alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *See* (Doc. 1 at 1, 3–4, 5). "The Eighth Amendment guarantees the right to be free from 'cruel and unusual punishments' while in custody." *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (citing *Whitley v. Albers*, 475 U.S. 312, 318 (1986)). "A properly stated Eighth Amendment claim must [include] a subjective and objective element." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The subjective element requires evidence showing that the "defendant official act[] with a 'sufficiently culpable state of mind,'" *id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), while the objective element requires the plaintiff to demonstrate that the defendant official's conduct was "objectively 'harmful enough,' or 'sufficiently serious' to violate the Constitution." *Id.* (quoting *Wilson*, 501 U.S. at 298, 303).

For Bevans to state a plausible Eighth Amendment claim based on the failure to provide adequate medical treatment, he must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837. A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (explaining that a prisoner-plaintiff can show deliberate indifference where prison official "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed" (internal citations and quotation marks omitted)). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235

(3d Cir. 2004); *see also Estelle*, 429 U.S. at 106 (explaining that complaints that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) ("Deliberate indifference requires significantly more than negligence."); *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (pointing out that "disagreement between the prisoner and medical personnel over the proper course of treatment" does not show deliberate indifference (citing *Spruill*, 372 F.3d at 235)), *cert. denied sub nom. Pennsylvania v. Montanez*, No. 25-1073, 2026 WL 1718015 (U.S. June 15, 2026).

Here, presuming that Bevans sufficiently identifies a serious medical need in his complaint, he fails to allege that Abel was deliberately indifferent to that serious medical need. Almost all of Bevans's allegations relating to deliberate indifference are conclusory in nature. *See, e.g.*, (Doc. 1 ¶12 ("Defendants failed and/or refused to provide adequate medical care and reasonable accommodations."); *id.* ¶17 ("Defendants knew of and disregarded excessive risks to Plaintiff's health and safety."). To the extent that Bevans alleges facts, he does not allege how Abel was deliberately

indifferent to his serious medical needs. For instance, Bevans complains that "Defendants" failed to provide him with "[a]dequate medical evaluation and specialist care," (*id.* ¶18), which by necessary implication shows that he was receiving some form of medical evaluation and/or specialist care insofar as he is not alleging that he never received such care and instead complains about its adequacy. But Bevans does not describe the medical care he received or explain why it was inadequate.

Similarly, although Bevans complains that Defendants failed to give him a Z-code, he does not allege facts identifying Abel's job at SCI Mahanoy or explaining how Abel had the power to grant him Z-code status. More importantly, Bevans does not plead any facts showing that a single cell is necessary for his medical care. The Court recognizes that Bevans believes that a single cell is necessary, but he does not allege that any medical professional or other prison official determined that such an arrangement was necessary for his medical care. He also does not allege facts showing that a double cell restricts his mobility or ability to safely position himself, limits his access to hygiene during incontinence, or exacerbates his neurological and pain symptoms.

Overall, Bevans does not plead facts plausibly demonstrating (1) that Abel knew about his need for medical treatment and intentionally refused to

provide it, (2) delayed necessary medical treatment for a non-medical reason, or (3) prevented him from receiving needed or recommended medical treatment. Accordingly, due to Bevans's failure to plead facts showing Abel's deliberate indifference, the Court will dismiss his deliberate-indifference-to-serious-medical-needs claim against Abel.

**(2) Conditions of Confinement**

Bevans also asserts an Eighth Amendment claim based on the conditions of his confinement at SCI Mahanoy. *See* (Doc. 1 at 4). When advancing an Eighth Amendment conditions-of-confinement claim, Bevans must plausibly allege that: (1) he suffered a "sufficiently serious" deprivation; and (2) the prison official defendant had a sufficiently culpable state of mind. *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (quoting *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020)). The first element is an objective standard requiring evidence demonstrating that Bevans was denied "the minimal civilized measures of life's necessities." *Id.* (quoting *Wilson*, 501 U.S. at 299). Only "extreme deprivations" are sufficient to make out a conditions-of-confinement claim. *Hudson*, 503 U.S. at 8–9. Thus, it is insufficient for Bevans to show that he was merely uncomfortable. *See id.* Rather, he must demonstrate that the conditions of his confinement posed a "substantial risk

of serious harm" to their health or safety. *Id.* (quoting *Farmer*, 511 U.S. at 834).

Bevans must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). "Although a combination of confinement conditions—considered alone constitutionally insufficient—may present an Eighth Amendment violation, [a plaintiff] nevertheless must cumulatively produce 'the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Young v. Ferguson*, No. 18-cv-879, 2020 WL 1505683, at *6–7 (M.D. Pa. Mar. 30, 2020) (quoting *Wilson*, 501 U.S. at 304), *aff'd*, 830 F. App'x 375 (3d Cir. 2020) (unpublished)); *see also Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (explaining that basic human needs include "food, clothing, shelter, sanitation, medical care and personal safety").

As explained above, the second element is subjective and requires the plaintiff to prove that the defendant "kn[e]w of and disregard[ed] an excessive risk to [the plaintiff's] health or safety." *Farmer*, 511 U.S. at 837. Thus, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.*; *see also Beers-Capitol v. Whetzel*, 256 F.3d 120,

133 (3d Cir. 2001) ("The knowledge element of deliberate indifference is subjective, . . . meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." (citing *Farmer*, 511 U.S. at 837–38)).

In this case, Bevans fails to plead a plausible conditions-of-confinement claim. He fails to allege any facts indicating that he was denied the minimal civilized measures of life's necessities while at SCI Mahanoy. Although he asserts that he lacks safe housing while in a double cell, he does not specify how the cell poses a risk of harm to him, much less a "substantial risk of harm" as required to establish the objective element of a conditions-of-confinement claim. *Hudson*, 503 U.S. at 8–9.

Additionally, Bevans does not allege any facts plausibly showing that Abel had a sufficiently culpable state of mind. Bevans does not allege facts upon which the Court can reasonably infer that Abel was aware of the conditions of confinement in Bevans's cell (especially considering Bevans does not identify those conditions in his complaint) and was aware that those conditions somehow posed an excessive risk to Bevans's health or safety. Therefore, the Court will also dismiss Bevans's Eighth Amendment conditions-of-confinement claim against Abel for failure to state a plausible claim for relief.

### 3. ADA and RA Claims

Bevans asserts claims under Section 504 of the RA and Title II of the ADA against Defendants. The Court finds that Bevans asserts plausible RA and ADA claims against the DOC but will dismiss his claims against SCI Mahanoy as duplicative of his claims against the DOC. The Court will also dismiss Bevans's claims against Abel because there is no individual liability under the ADA or RA and, to the extent that Bevans asserts official-capacity claims against Abel, such claims are also duplicative of his claims against the DOC.

The ADA and RA "establish 'an affirmative obligation for public entities to make benefits, services, and programs accessible to people with disabilities.'" *Haw. Disability Rts. Ctr. v. Kishimoto*, 122 F.4th 353, 361 (9th Cir. 2024) (quoting *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017)). One of the purposes of the RA is "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society . . . ." 29 U.S.C. §701(b)(1). As for the ADA, it "embodies a 'national mandate for the elimination of discrimination against individuals with disabilities[,]' 42 U.S.C. §12101(b)(1)[, which is] performed across 'three titles of regulation—Title I (employers), Title II (governments), and Title III (public accommodations).'"

*Zangara v. Nat'l Bd. of Med. Examiners*, Nos. 24-2664, 24-2672, 2025 WL 1218188, at *4 (3d Cir. Apr. 28, 2025) (unpublished) (quoting *Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 176 (3d Cir. 2019)).

Title II of the ADA and Section 504 of the RA provide similar protections. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132(1). Section 504 states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. §794(a).

In addition to providing similar protections, Title II and Section 504 require substantially similar factual allegations to state plausible claims for relief. Under both statutes, plaintiffs must allege that "(1) they are qualified individuals; (2) with a disability; and (3) they were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were subjected to discrimination by any such entity; (4) by reason of their disability." *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023) (citing

*Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018)). Also, "[w]here compensatory damages are sought, a plaintiff must also show intentional discrimination under a deliberate indifference standard." *Id.* (citing *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019)); *see also D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 270 (3d Cir. 2014) (requiring plaintiff seeking to establish deliberate indifference to show "(1) [actual] knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that [actual] knowledge" (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013))).

"Congress has directed the courts to construe the ADA and the [RA] such that conflicting standards do not arise." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 300 n.4 (3d Cir. 2007) (citing *Bragdon v. Abbott*, 524 U.S. 624 (1998)); *see also S.H. ex rel. Durrell*, 729 F.3d at 260 ("The same standards govern both the RA and the ADA claims."). Nevertheless, "the ADA and the [RA] are not exactly the same." *New Directions Treatment Servs.*, 490 F.3d at 300 n.4. For instance, under Section 504, a plaintiff must also allege that "the program in question received federal dollars." *Durham*, 82 F.4th at 225 (citing 29 U.S.C. §794 and *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021)); *see also Jeremy H. by Hunter v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 279 (3d Cir.

1996) (explaining that the ADA "extends the nondiscrimination rule of Section 504 of the [RA] to services provided by any 'public entity' without regard to whether the entity is a recipient of federal funds").

Additionally, the causation elements of Section 504 and Title II differ. *See Durham*, 82 F.4th at 226. Section 504 requires a plaintiff to establish that "the disability [was] the sole cause of the discriminatory action." *Id.* (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235–36 & n.11 (3d Cir. 2013)); *see also* 29 U.S.C. §794(a) ("No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."). Thus, "[a]n alternative cause of why a plaintiff was treated differently is fatal to a claim under the [RA] 'because disability would no longer be the sole cause.'" *Lewald v. Pa. Dep't of Corr.*, No. 22-cv-4625, 2025 WL 1568286, at *3 (E.D. Pa. June 3, 2025) (quoting *CG*, 734 F.3d at 236 n.11). On the other hand, Title II "only requires but-for causation," *Durham*, 82 F.4th at 226 (citing *CG*, 734 F.3d at 235–36 & n.11), *i.e.*, that the plaintiff establish that the discriminatory action was "by reason of [the plaintiff's] disability." 42 U.S.C. §12132.

Preliminarily, the Court notes that the DOC "is a proper defendant under both Title II and Section 504" because it "is a public entity and receives federal funds." *Montanez*, 154 F.4th at 145 (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) and *Furgess*, 933 F.3d at 288–93); *see also Miller v. Little*, No. 22-cv-4264, 2023 WL 3674336, at *8 (E.D. Pa. May 25, 2023) ("Generally, the proper defendant for a Title II ADA claim is the public entity or an individual who controls or directs the functioning of the public entity."). Although the Court recognizes that Title II applies to state prisons, *see Yeskey*, 524 U.S. at 210–12, because Bevans names a proper Defendant, the Court will dismiss his ADA and RA claims against SCI Mahanoy as duplicative of his claims against the DOC. As for his ADA and RA claims against Abel, Bevans cannot seek to hold Abel individually liable under Title II or Section 504, *see Emerson v. Thiel Coll.*, 296 F.3d 184, 189–90 (3d Cir. 2002) (concluding that neither Title II of the ADA nor Section 504 of the RA provide for individual liability because individuals are not public entities or the ones receiving federal aid, respectively). Moreover, to the extent that Bevans's complaint can be reasonably construed as containing ADA and RA claims against Abel in his official capacity, those claims are duplicative of his claims against the DOC. *See Graham*, 473 U.S. at 165–66 ("Official-capacity suits . . . 'generally represent only another way of pleading

an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978))); *see also Funk v. Pa. Dep't of Corr.*, No. 25-cv-34, 2026 WL 885486, at *6 (W.D. Pa. Mar. 9, 2026) (recommending dismissal of ADA claims against individual defendants in their official capacities because they were duplicative of plaintiff's ADA claims against the DOC), *report and recommendation adopted*, 2026 WL 883570 (W.D. Pa. Mar. 31, 2026). As such, the Court will also dismiss Bevans's ADA and RA claims against Abel.

As for Bevans's ADA and RA claims against the DOC, the Court presumes that he has sufficiently alleged that he is a qualified individual with a disability. Bevans also alleges that he has requested various accommodations for his disabilities, which the DOC has either refused, or failed, to provide to him. Considering that, "in the prison context, 'a prison's refusal to accommodate inmates' disabilities in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs represents a denial of the benefits of a prison's services, programs, or activities,'" *Hammond v. Pa. Dep't of Corr.*, No. 25-cv-48, 2026 WL 2279774, at *16 (M.D. Pa. Aug. 6, 2026) (quoting *Happel v. Bishop*, No. 23-cv-13, 2024 WL 1508561, at *7 (W.D. Pa. Feb. 22, 2024), *report and recommendation adopted*, 2024 WL 1003902 (W.D. Pa. Mar. 8, 2024)), the Court will allow

Bevans's ADA and RA claims to pass statutory screening. However, the Court will dismiss Bevans's claims to the extent that he seeks punitive damages because such damages are not recoverable under Title II or Section 504. *See Barnes v. Gorman*, 536 U.S. 181 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under §202 of the ADA and §504 of the Rehabilitation Act").

**C. Leave to Amend**

Before dismissing all or part of a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule that court should grant leave to amend unless doing so would be futile). Here, the Court finds that it would be futile to grant Bevans leave to file an amended complaint regarding: (1) his Section 1983 claims against the DOC or SCI Mahanoy because any amendment would be futile

insofar as they are not "persons" amenable to suit under Section 1983;[5] (2) his Section 1983 Fourteenth Amendment due process claims against Abel; (3) his ADA and RA claims against SCI Mahanoy and Abel (in his individual and official capacities); and (4) his ADA and RA claims to the extent he seeks punitive damages. The Court will, however, grant Bevans leave to amend his Eighth Amendment claims should he desire to do so because the Court cannot state at this time that any amendment would be futile.

## IV. CONCLUSION

For the foregoing reasons, the Court will: (1) grant the IFP Application and allow Bevans leave to proceed *in forma pauperis* in this case; (2) dismiss with prejudice Bevans's (a) Section 1983 claims against the DOC and SCI Mahanoy, (b) Section 1983 Fourteenth Amendment due process claims against Abel, (c) ADA and RA claims against SCI Mahanoy and Abel in his individual and official capacities, and (d) ADA and RA claims to the extent he seeks punitive damages; and (3) dismiss Bevans's Section 1983 Eighth Amendment claims without prejudice to him repleading them in an amended

---

[5] The Court recognizes that claims barred by the Eleventh Amendment must be dismissed without prejudice, *see Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023); however, because any amendment would be futile insofar as neither the DOC nor SCI Mahanoy are persons subject to suit under Section 1983, the Court will dismiss Bevans's Section 1983 claims against the DOC and SCI Mahanoy with prejudice.

complaint. If Bevans does not timely file an amended complaint, this action will proceed on only his claims under the ADA and RA against the DOC. An appropriate Order follows.[6]

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 8/26/26
26-2122-01

[6] The Order will provide Bevans more information on the filing of an amended complaint.